## Case No. 14,163.

### TRECARTIN v. The ROCHAMBEAU.

[2 Cliff. 465.] [1]

Circuit Court, D. Maine. Sept. Term, 1865. [2]

PAYMENT—DEPRECIATED CURRENCY—CONTRACT—SEAMEN'S WAGES.

The plaintiff, in 1863, shipped at St. John, New Brunswick, on board an American vessel, for a specified voyage, at an agreed rate of wages per month, viz., "$25 per month," the said voyage to terminate in the United States. It was contended that the plaintiff was entitled to an amount, in the currency of the United States, equal to the value of the contract price in this country, if paid in the currency of St. John. *Held*, there was no question of the relation of one currency to another involved in the case; the contract for wages being expressed in dollars and cents, and the payment to be made in this country, the plaintiff could recover no more than the amount specified in the contract.

[See The Australia, Case No. 667.]

[Appeal from the district court of the United States for the district of Maine.]

This was a libel [by Thomas Trecartin against the ship Rochambeau, John E. Donnell, claimant] in a cause of subtraction of wages, civil and maritime, and the case came before the court on appeal from a decree of the district court for this district. The libellant was the second mate of the ship Rochambeau, and the libel was in rem against the ship, to recover a balance of wages, claimed by the libellant, which the master and owner refused to pay. The libellant shipped at St. John on the 27th of April, 1863, and was discharged at the port of Portland on the 7th of July, 1864, having, therefore, served fourteen months and seven days. He alleged the contract to be that he should be paid $25 per month in St. John currency; and the balance claimed as due was $201.50. The terms of the shipping articles were for a voyage "from St. John to London, from thence where freight or charter may offer, or as the master may direct, for a period of time not exceeding nine months, voyage to end at a port in the United States." The shipping articles were signed at St. John, but the sum specified as the rate of wages was expressed in decimals, and not in St. John currency, as alleged in the libel; as there expressed, the rate of wages was "twenty-five dollars per month" with $25 advance; and there was no evidence that the libellant was entitled to or expected any higher rate. Under the shipping articles the libellant went to London and back to the port of departure; and the period of service for which he shipped not having elapsed, he went a second voyage to the same port, without signing any new articles or making any new agreement as to service or wages. Exhibits attached to the libel showed that the second voyage was by the way of Newport, in England, and that the ship went to the Mediterranean before she returned to Portland. It was agreed that the ship was an American vessel, and the libellant a citizen of the United States. The vessel returned to the port of Portland on the 7th of July, 1864, and delivered a cargo of salt. The libellant faithfully performed his duty as second mate from the time he shipped until his discharge; and it was conceded that he was entitled to his wages as specified in the shipping articles, deducting the several payments made, namely, at St. John, London, Newport, Malta, and Trapani. It was agreed that those several payments were made in the currency of those ports; that is, in bills at St. John, and in gold and silver at the other places, and that they amounted in all to $213.50. The wages of the libellant for the entire period of his service amounted to $356.25, leaving a balance due him of $142.75 at the time of the discharge. In the district court, a decree was entered that the libellant was entitled to recover, as the balance of his wages, $154, to be paid in specie, or its equivalent, or $308 in the United States currency, with costs, and that execution should issue for that sum with costs of suit. [Case No. 11,973.] From this decree the claimant appealed.

J. O'Donnell, for libellant.

Evans & Putnam, for respondent.

CLIFFORD, Circuit Justice. The principal objection to the decree, as urged by the claimant, is, that the alternative amount awarded to the libellant is double the amount found to be due him in specie, and that it authorizes execution to issue against the stipulators for the alternative amount. The right of the libellant to recover is not disputed, but it is insisted that he is bound by his contract, and that he is not entitled to any greater sum than is therein specified.

The terms of the contract for the first voyage are as plain as they can be expressed in our language. They are "twenty-five dollars per month"; and it was especially stipulated that the voyage was to end in a port of the United States. Such were the terms of the original contract; and I concur with the district judge that the circumstances show that the libellant continued in the ship throughout the period of service at the same rate of wages. When the ship returned from the first voyage, the period of service had not expired; and inasmuch as the libellant went the second voyage without any objection by either party, and without any new contract, it must be understood that the same rate of wages was to be continued. Undoubtedly both parties so understood the arrangement, as all the partial payments were adjusted on that basis. Owners of the vessel agreed to pay $25 per month, and they agreed to pay nothing more, and both parties are bound by the terms of the contract. Looking at the case in that point of view, the question presented is not in what currency the libellant is to be paid, but how

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Modifying Case No. 11,973.]

much he is entitled to recover. He contracted for $25 per month, and it is not possible for the court to give him any more without assuming to make a new contract. The theory of the libellant is, that he is entitled to a decree for double that amount, because the contract was made at St. John, and because the currency of that place was selling in the market here, at the time the libellant was discharged, at a corresponding advance in legal-tender notes of the currency of the United States. But the theory cannot be sustained for several reasons: 1. Because it assumes that the execution when issued will necessarily be satisfied in our paper currency, whereas the marshal may levy the same upon the gold or silver currency of the stipulators. 2. Because it assumes that a dollar here is worth less than a dollar where the contract was executed, of which there is no proof in the case, unless it be assumed that a dollar here necessarily means a dollar in paper currency, which cannot be admitted. 3. Because it is utterly inconsistent with the terms of the contract which alone furnish the rule of decision. The words of the contract are, "twenty-five dollars per month," and it is not possible to allow any greater sum without introducing a new provision, to which the parties have not assented. There is, therefore, no question of the relation of one currency to another involved in the case, and it is wholly immaterial whether the contract is governed by the law of the place where it was made or by the law of the place where it is to be performed, as in either view of the question the result must be the same. Where the contract for wages is expressed in dollars and cents, and the payment for the service is to be made here, it is clear that the party entitled to wages can recover no more than the amount specified in the contract; and in such a case it makes no difference where the contract was signed or what may be the state of exchange. Decree of the district court must, therefore, be modified in conformity to this opinion. Libellant is entitled to a decree for the sum of $142.75, with interest from the time of his discharge to the present time, with costs in the district court. Appellant to recover no costs, except the proper charges of the clerk.

TRECARTIN v. The ROCHAMBEAU. See Case No. 11,973.